IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HILARY PHILLIPS, | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: PX-19-00653 |
| STATE OF MARYLAND, ET AL. | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Defendants State of Maryland and Maryland Department of Health (collectively, "Defendants"), by and through undersigned counsel, submit this Memorandum in support of their Opposition to Plaintiff's Motion for Leave to File Amended Complaint.

## INTRODUCTION

I. Allegations of Proposed Amended Complaint

The Maryland Department of Health's ("MDH") Behavioral Health Administration, formerly employed Plaintiff Hilary Phillips as its Director of Office Planning.[1] (Doc. 8-2 at ¶¶ 1, 11.) She began working in that position on March 1, 2017. (Doc. 8-2 at ¶ 11.) Cynthia Petion was her immediate supervisor, and her second-line supervisor was Dr. Kimberly Cuthrell. (Doc.

---

[1] Defendant Maryland Department of Health is a Principal Department of Defendant State of Maryland. Md. Code Ann., State Gov't § 8-201(b)(8) (2016 Supp.)

8-2 at ¶¶ 12-13.)  Dr. Barbara Bazron, Deputy Secretary of the Behavioral Health Administration, was Ms. Phillips's third-line supervisor.  (Doc. 8-2 at ¶ 14.)

Ms. Phillips allegedly "singled out Ms. Phillips by regularly raising her voice, making derogatory, threatening, and hostile comments, excluding her from meetings, openly criticizing work-related efforts and by sabotaging her work performance with excessively controlling behavior."  (Doc. 8-2 at ¶ 16.)  By June of 2017, Ms. Phillips had complained to Human Resources about Ms. Petion's conduct, and Human Resources allegedly told her to "look for another job."  (Doc. 8-2 at ¶ 17.)  Then in September of 2017, Ms. Phillips told Dr. Bazron and the Behavioral Health Administration's Chief of Staff, Anna Barefoot, about Ms. Petion's alleged bullying.  (Doc. 8-2 at ¶ 18.)  She also told Dr. Cuthrell about the claimed bullying since Dr. Cuthrell had been recently hired.  (Doc. 8-2 at ¶ 19.)  Dr. Cuthrell addressed the bullying after it was reported to her.  (Doc. 8-2 at ¶ 20.)

In February of 2018, Ms. Phillips "again reported harassment to Human Resources."  (Doc. 8-2 at ¶ 22.)  On February 13, 2018, Human Resources told Dr. Cuthrell and Dr. Bazron of Ms. Phillips's bullying allegations, and the next day, "Ms. Petion was removed from the building."  (Doc. 8-2 at ¶¶ 23, 24.)  At some point in early 2018, Dr. Bazron investigated the alleged bullying, but in March of 2018, "the bullying charges were considered insufficient of actionable bullying."  (Doc. 8-2 at ¶ 26.)  Accordingly, Ms. Petion returned to being Ms. Phillips's supervisor on March 19, 2018.  (Doc. 8-2 at ¶ 27.)  Ms. Petion allegedly began bullying Ms. Phillips again and purportedly referred to her "as having bipolar disorder and borderline personality disorder" in Dr.

Bazron's presence. (Doc. 8-2 at ¶¶ 28-29.) Then, on May 22, 2018, Ms. Petion claims that Dr. Cuthrell was fired for standing up to Dr. Bazron on Ms. Phillips's behalf. (Doc. 8-2 at ¶ 30.) One day later, Human Resources allegedly informed Ms. Phillips that they did "not want to be in the middle of any of this anymore." (Doc. 8-2 at ¶ 31.)

On May 24, 2015, Ms. Petion told Dr. Bazron that Ms. Phillips was questioning her leadership, and the next day Dr. Bazron talked to Ms. Phillips about these allegations. (Doc. 8-2 at ¶¶ 32-33.) Several weeks later, in July of 2018, Ms. Phillips took leave under the Family and Medical Leave Act, "due to the allegedly bullying conduct" before she quit her job on July 19, 2018. (Doc. 8-2 at ¶¶ 34-35.) At the following staff meeting, Ms. Petion allegedly told Ms. Phillips's former co-workers that "Ms. Phillips resigned due to her mental health problems." (Doc. 8-2 at ¶ 36.)

Ms. Phillips's Amended Complaint contains a single count of disability discrimination under the Rehabilitation Act of 1973 against Defendant State of Maryland. (Doc. 8-2 at ¶¶ 37-40.)

II. Summary of Amendments

Ms. Phillips's Amended Complaint makes only two substantive amendments. She has removed the Maryland Department of Health as a Defendant. (Doc. 8-1 at ¶¶ 3-5, 7, 10.) Defendants consent to this single amendment only. She also changed the original Paragraph 48 from "The unwelcome harassment was based in part on Plaintiff's perceived disability" to "The unwelcome harassment was because of Plaintiff's perceived disability and Defendant perceived

3

that Plaintiff was seriously limited in one or more major life activities." (Doc. 1 at ¶ 48; Doc. 8-1 at ¶ 48.) Her motion for leave to amend clarifies some other points as well. First, her case is premised only on allegations that the State regarded her as having a disability rather than her actually having a disability. (Doc. 8 at 2.) She also denies that she is making a constructive discharge claim. (Doc. 8 at 3.)

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure allow a party to amend a pleading once as a matter of course within "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Leave to amend a complaint should be "freely given," but it is not automatic; it should be given only when "justice so requires." Fed. R. Civ. Proc. 15(a)(1); Wright & Miller, § 1487 (3d ed.). Circumstances that warrant denying leave include amendments that are offered in bad faith or are otherwise prejudicial to the other side or futile. *See* Fed. R. civ. Proc 15(a)(1); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Futility may be based on substantive or procedural considerations, *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (1980), and it exists when the proposed amendments fail to state a claim under the applicable federal rules of pleading, *i.e.*, Fed. R. Civ. P 12(b)(6), *Katyle v. Penn National Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

A Federal Rule of Civil Procedure Rule 12(b)(6) motion tests the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The Court must

presume the well pleaded allegations of a complaint to be true, *Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977), but it is not bound by a plaintiff's legal conclusions. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). Furthermore, the Court need not accept a complaint's "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

A successful complaint "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted) (citing Fed. R. Civ. Proc. 8). In other words, a plaintiff must plead sufficient "facts to satisfy the elements of [the] cause of action…." *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). Such factual allegations must state a claim for relief that is "plausible on its face" rather than just a mere possibility. *Id*. at 570. In assessing plausibility, a court must "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## ARGUMENT

### I. Plaintiff's Motion for Leave to File an Amended Complaint is Futile Because She Has Failed to State a Claim Upon Which Relief May Be Granted.

Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  In order to be an "individual with a disability" a person must "(i) ha[ve] a physical or mental impairment which substantially limits one or more major life activities; (ii) ha[ve] a record of such an impairment; or (iii) [be] regarded as having such an impairment." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001) (citing 29 U.S.C. § 705(20)(B)).

Ms. Phillips has not adequately alleged with sufficient factual assertions that she was otherwise qualified for her position or that she was regarded as disabled under the Rehabilitation Act.  Ms. Phillips's Amended Complaint only asserts the legal conclusion that the State of Maryland regarded her as disabled and as someone who was "seriously limited in one or more major life activities."  (*See* Doc. 8 at 2; Doc. 8-2 at ¶¶ 29, 38, 44.)  While she alleges that Ms. Petion "referred to Ms. Phillips as having bipolar disorder and borderline personality disorder in the presence of Dr. Bazron," she provides no factual allegations that the State, through Ms. Petion, believed her perceived conditions to be as limiting as required by the Rehabilitation Act.  (Doc. 8-2 at 48; *see also* 29 U.S.C. § 705(20)(B); 42 U.S.C. 12102(1),(3) (requiring in "regarded as" cases that a perceived impairment be more than "transitory and minor.")  Such legal conclusions do not bind this Court in analyzing the proposed Amended Complaint. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

Ms. Phillips's suggestion in her motion for leave to amend, which was not included in the Amended Complaint, that having a bipolar disorder diagnosis limits one's ability to perform the

essential duties of a job requiring interpersonal interaction is unavailing. The case that she cites in support, *Darcangelo v. Verizon Maryland, Inc.*, 2005 U.S. Dist. Lexis 37660, 02-cv-00816-WDQ, leads to the exact opposite conclusion. (Doc. 8 at 4.) In that case, the Plaintiff had been hired at her job in 1994, five years after having been diagnosed with bipolar disorder. *Darcangelo*, 2005 WL 1367083, at *1, *aff'd*, 189 Fed. App'x 217 (4th Cir. 2006). She did not begin behaving unpredictably at work until 1997. *Id*. An appropriate inference, therefore, is that having bipolar disorder does not necessarily mean that a person cannot perform the essential functions of a job that include interacting with others since the *Darcangelo* plaintiff appears to have done it for about three years. *See id.* Therefore, he has failed to properly plead that she was regarded as disabled and her proposed amendment is futile.

Ms. Phillips's Amended Complaint has also not properly plead a disability related hostile work environment claim. To establish a hostile work environment claim, a plaintiff must allege facts sufficient to demonstrate that the alleged harassment: "(1) was unwelcome; (2) was based on her disability; (3) was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) was imputable to her employer." *Fierce v. Burwell*, 101 F. Supp. 3d 543, 550-51 (D. Md. 2015) (citing *Pueschel v. Peters,* 577 F.3d 558, 564–65 (4th Cir. 2009)).

The Plaintiff's allegations fall short on the second element of the cause of action, *i.e.*, that the alleged harassment was based on her perceived disability. The Rehabilitation Act requires that a plaintiff show such discrimination occurred "solely by reason of his or her disability." 29

U.S.C. § 794(a). The Fourth Circuit does not appear to have determined exactly what "solely by reason of" means for purposes of causation, but other courts have established a high standard. One court used a "but-for" standard of causation. *Butler v. Washington Metropolitan Area Transit Authority*, 275 F. Supp. 3d 70, 83 (D.D.C. 2017) (requiring "but-for" causation). "But-for" causation means that the wrongful actions would not have occurred in the absence of the biased motive. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240 (1989) (plurality opinion) (*superseded on other grounds by* the Civil Rights Act of 1991); *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017). Other courts have defined "solely by reason of" to mean the "sole reason." *See Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503-05 (5th Cir. 2002) (holding that a jury was improperly charged under the Rehabilitation Act when it was asked to determine if disability discrimination was a motivating factor in the Defendant's treatment of the Plaintiff, *i.e.*, whether the Defendant intentionally discriminated against the Plaintiff "because of his disability"); *Assa'Ad-Faltas v. Commonwealth of Virginia*, 738 F. Supp. 982, 987 (E.D.Va 1989) ("A required element of a claim for a violation of the Rehabilitation Act is a showing that an employee's handicap is the sole reason for an employer's action.").

Ms. Phillips's conclusory legal statement that her harassment "was because of Plaintiff's perceived disability..." is insufficient. (Doc. 8-2 ¶ 44 (emphasis added). The Court is not bound by a plaintiff's legal conclusions. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). A plain reading of her allegations reveal that the claimed disability discrimination does not meet the "sole reason" definition that some courts use. *See Soledad*, 304 F.3d at 503-05;

*Assa'Ad-Faltas*, 738 F. Supp. at 987.  Even under a "but-for" formulation of the "solely by reason of his or her disability" requirement in 29 U.S.C. § 794(a), her allegations fall short.  The alleged harassment began at least as early as June of 2017, but the first allegation directed towards her belief that Defendants regarded Ms. Phillips as disabled did not occur until sometime between March and May of 2018.  (Doc. 8-2 at ¶¶ 16-17, 27-30.)  The fact that the alleged harassment long predated Ms. Petion's claimed use of "bipolar" and "borderlline personality disorder" is critical because a decisionmaker's knowledge of a disability, or by analogy, a fully formed perception of a disability, is required to show disability discrimination under the Rehabilitation Act.  *See Crandall v. Paralyzed Veterans of America*, 146 F.3d 894, 896-97  (D.C. Cir. 1998) ("[F]or this causal link to be shown the employer must have acted with an awareness of the disability itself, and not merely an awareness of some deficiency in the employee's performance that might be a product of an unknown disability.").  Accordingly, the Amended Complaint demonstrates that the alleged harassment would have occurred absent the purported discriminatory motive, and Plaintiff has not adequately plead the causation element of her Rehabilitation Act claim.  The Amended Complaint should be deemed futile, and the matter should be dismissed for failure to state a claim.

As a more general matter, a hostile environment typically is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of ... employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993).  Courts "usually only allow hostile work environment claims to proceed where the discriminatory abuse is near constant, oftentimes of a violent or threatening

nature, or has impacted the employee's work performance." *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp.2d 757, 776 (D. Md. 2010). If Ms. Phillips were to rely solely on the one or possibly two references that Ms. Petion made of bipolar disorder or borderline personality disorder, these mentions are insufficient, by themselves, to create a hostile workplace. *See Boyer-Liberto v. Fontainebleu Corp.*, 786 F.3d 264, 277 (4th Cir. 2015)(en banc) (noting that an isolated incident of using an epithet is usually not actionable under a hostile work environment theory unless it is "extremely serious"); *Ewing v. Doubletree DTWC, LLC*, 673 Fed. Appx. 808, 815 (10th Cir. 2016) (a few isolated incidents of abusive behavior are insufficient to state a claim for hostile work environment). Here, the use of medical conditions rather than epithets once or possibly twice to describe Plaintiff without factually connecting them to any of the alleged bullying is insufficient to allege a hostile work environment claim. Accordingly, the Amended Complaint would be futile and the case must be dismissed.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court deny Plaintiff's motion for leave to amend as futile and dismiss this case with prejudice.

Respectfully submitted,

BRIAN E. FROSH
ATTORNEY GENERAL OF MARYLAND

_____/s/_____
Christopher A. Gozdor
Federal Bar No. 16136
Assistant Attorney General
Maryland Attorney General's Office
300 West Preston Street, Suite 201
Baltimore, Maryland 21201
Ph: (410) 767-1856 / Fax: (410) 333-7467
E-Mail:  christopher.gozdor@maryland.gov

Attorneys for Defendants